# Pusey, Executor, &c., of Simmons, *versus* Dusenbury.

1. Simmons was a special partner; after the expiration of the partnership, he filed a bill against the other members of the firm for an account, receiver, &c. A decree was made for an account and a receiver appointed. He afterwards settled with his partners and received securities which were assets of the firm. *Held*, that this having occurred after the expiration of the partnership, Simmons was not liable as a general partner, under the Limited Partnership Act of March 21st 1836, to the creditors of the firm.

[Pusey *v.* Dusenbury.]

2. Such a liability under the act relates to an existing partnership, and not to a partnership already dissolved.

3. A bonâ fide compromise of a suit to compel the settlement of a partnership; and the special partner's receipt for what he may believe due him, does not make him a general partner of an expired partnership.

March 13th 1874.  Before AGNEW, C. J., SHARSWOOD and GORDON, JJ.  WILLIAMS, J., at Nisi Prius.

MERCUR, J., having been of counsel in this case did not sit.

Error to the Court of Common Pleas of *Bradford county :* No. 61, to January Term 1874.

This was an action of debt brought by George Dusenbury "against J. G. Ganung, W. B. Wightman and Jesse Lane, and a foreign attachment with a clause against Joshua Simmons, &c." The writ was issued April 25th 1860, against all the defendants, including Simmons, partners under the firm of Ganung & Wightman.  Simmons afterwards died; his death was suggested, and Edward Pusey, his executor, substituted.

The sheriff returned to the writ, " the defendants not found in his bailiwick, and land attached owned by Joshua Simmons." The declaration was against all the defendants; and the plea was entered and affidavit of defence filed for all the defendants.

The suit was upon two notes drawn by Ganung & Wightman to the order of George Dusenbury : one dated June 4th 1857, payable in 30 days, for $474.36, " with use ;" the other dated June 10th 1857, payable in three months, for $988.21, " with use." These notes were given for lumber purchased for the firm.

The case was referred to S. P. Williston, Esq., under the Act of April 6th 1869 (Pamph. L. 725), relating to references in Bradford county.  Before the referee the plaintiff asked judgment only against Simmons's executor by virtue of the foreign attachment.

The referee reported : " At the commencement of the suit Ganung and Wightman lived in Philadelphia, and Lane and Simmons lived in Wilmington, in the state of Delaware, where they had resided for several years.  On the 5th of May 1851 they entered into limited partnership for carrying on the lumber business in the district of Richmond in Philadelphia, Ganung and Wightman being the general partners, and Lane and Simmons the special partners ; the partnership to continue for five years from the 1st day of May 1851.  In 1857 the firm finally closed up, being insolvent."

The plaintiff claimed against Simmons alone on the ground that having been a special partner he so interfered with the business of the firm, amongst other things, by drawing out of the firm $3000 before the firm debts were paid, he had rendered himself liable as general partner for all the debts of the firm.  The partnership expired by its limitation May 1st 1856, and Simmons then withdrew, but the firm continued business up to January 1857.

[Pusey v. Dusenbury.]

On the 30th of January 1857, Simmons filed a bill in equity against the other partners, and one Henry A. Salter, in the District Court of Philadelphia, setting out the dissolution of the partnership, and charging that he could not obtain a settlement; that the defendants were fraudulently appropriating the firm assets. The prayer was for an account, a receiver and an injunction to restrain defendants from meddling with the firm property. On the 6th of March a receiver was appointed, and a decree restraining defendants from intermeddling with the firm property, &c. On the 18th of June 1857, this suit was settled, and Simmons received from Ganung & Wightman a bond and mortgage for $2450 and their promissory note for $550 to Darnell Braddock, endorsed by him, making in the whole $3000, and gave a receipt to Ganung & Wightman for them, " in full settlement and discharge of all claims and demands past, present or future on said firm, either on account of the profits of said business or of the money originally contributed by me as special partner."

The referee found that these securities were assets of the firm, and that " Simmons did withdraw from the copartnership assets of the firm."

Each party submitted a number of points to the referee.

The plaintiff's second point was :—

Joshua Simmons made himself liable, as a general partner, by settling with the firm, and withdrawing his capital put in, with the interest thereon, which was an interference with the capital of the firm, while there were outstanding debts, and made him liable with the firm, under the 24th and 25th sections of the Act of the 21st of March 1836.

The defendant's second point was :—

Joshua Simmons was not liable upon any contract made by Ganung & Wightman after the expiration of the copartnership, and therefore not liable to the plaintiff for the lumber in question.

In answer to the defendant's second point, the referee said:—

" The purport of this, that Joshua Simmons would not be liable upon any contract made by Ganung & Wightman after the expiration of the partnership, is true, unless he afterwards consented to the same. As to the latter part of it, that, therefore; he is not liable in this case, I refuse to find, as the lumber was delivered, and sold, before the expiration of the partnership."

In answer to the plaintiff's second point, he said :—

" I find this true, as requested. Having found the second proposition true, it is wholly unnecessary to answer the others.

" I find, under all the law and facts, the plaintiff is entitled to recover the amount of the two notes given in evidence by him before referred to, with interest from their date, with costs of suit."

" And I do hereby, in considering all the law and facts, enter judgment in favor of George Dusenbury, the plaintiff, against

[*Pusey v. Dusenbury.*]

Edward Pusey, executor of Joshua Simmons, deceased, for the sum of two thousand eight hundred and one dollars and seventy-five cents, with costs of suit.''

Judgment was entered against the defendant for the amount found by the referee.

The defendant took a writ of error, and in several specifications assigned for error the finding of the referee.

*C. Gibbons,* for plaintiff in error.

*H. W. Patrick,* for defendant in error.

The opinion of the court was delivered, July 2d 1874, by

AGNEW, C. J.—This was a proceeding before a referee under an Act of April 6th 1869, Pamph. L. 725, applicable to Bradford county alone.

A limited partnership existed between John G. Ganung and Wm. B. Wightman as general partners, and Joshua Simmons and Jesse Lane as special partners. The referee finds that this partnership expired by its own limitation on the 1st day of May 1856. After this Ganung, Wightman and Lane continued the business, Simmons having withdrawn after termination of the partnership on the 1st of May. In January 1857, Simmons being unable to obtain a settlement of the affairs of the late firm, filed his bill in equity, setting out the partnership and its dissolution and charging fraudulent appropriation of the assets of the firm. A receiver was appointed and an injunction issued to restrain the defendants from collecting and receiving the assets. Subsequently, and after a rule on the defendants to plead, answer or demur, the parties came to a settlement whereby Simmons obtained from his partners a bond and mortgage for $2450, given by Owen Clarke to Jesse Lane, and by Lane assigned to Simmons; and a note made to Ganung & Wightman to the order of Darnell Braddock, endorsed by him, and partly paid by him to Simmons. On this state of the facts, the referee found that Simmons had, by the receipt of these claims, made himself liable as a general partner under the 21st and 22d sections of the Limited Partnership Act of 21st March 1836 : 2 Brightly 938, pl. 23 and 24. The 21st section makes void every sale, assignment and transfer of any of the property or effects of the general or special partner, made by him when insolvent or in contemplation of insolvency, with intent to prefer a creditor of his own, or of the partnership, over the partnership creditors. The 22d section declares that every special partner who shall violate any of the provisions of the preceding section, or concur in, or assent to, any such violation shall become liable as a general partner.

We think the conclusion of the referee was erroneous. These

sections evidently relate to the affairs of an *existing* partnership. They are intended to prevent the partners from disposing of their property to the prejudice of the partnership creditors. They do not apply to the case of a partnership already dissolved, where legal proceedings have been instituted by the special partner to enforce settlement of the partnership affairs. A bonâ fide compromise of such a proceeding and the receipt by the special partner of what he believes to be justly due to him, ought not to have the effect of turning him back by relation into a partnership expired by its own limitation, and from which he had, in fact, withdrawn. The law certainly never intended this result. It would be a penalty for the prosecution of what he supposed to be his just rights, inequitable and destructive of the formation of limited partnerships. His receipt of assets which should go to the payment of partnership creditors might be void, so far as to enable these creditors to follow these assets, though this we do not decide, but certainly ought not to operate to make him liable generally to all the creditors. If during the entire existence of the partnership, he has obeyed the law and not made himself amenable as a general partner, it would be a harsh interpretation of the law, whereby he is thrown backward into a relation long since terminated, and converted into a general partner by the mere pursuit of his rights.

Judgment reversed, and a *procedendo* awarded.